FILED
SUPERIOR COURT
OF GUAM

2024 MAY 20 PM 1:49

CLERK OF COURT



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | **Criminal Case No. CF0371-22** |
| | GPD Report No. 22-14293 |
| v. | |
| **EVIN BABAUTA PANGELINAN,** | |
| DOB: 05/22/2001 | **DECISION AND ORDER** |
| | (Motion to Quash Summons and Dismiss |
| Defendant. | Indictment) |

This matter came before the Honorable Alberto E. Tolentino on October 23, 2023, upon Defendant Evin Babauta Pangelinan's ("Defendant") Motion to Quash Summons and Dismiss Indictment (Sept. 19, 2022). At the hearing, attorney Curtis C. Van de veld appeared on behalf of Defendant, and Assistant Attorney General Renaida Z. San Nicolas appeared on behalf of the People of Guam.[1] Having duly considered the parties' briefing, oral arguments, and the applicable law, the Court hereby **DENIES** Defendant's Motion.

## BACKGROUND

On May 29, 2022, Defendant was charged by Magistrate's Complaint in the now-defunct Criminal Case No. CF0361-22. Mag. Compl., CF0361-22 (May 29, 2022). On that same day, some of the co-defendants in this case were charged by Magistrate's Complaint in the instant case, Criminal Case No. CF0371-22. Mag. Compl., CF0371-22 (May 29, 2022). On June 9, 2022, a Grand Jury returned an indictment in Criminal Case No. CF0371-22 against five individuals, including Defendant, thereby combining the two cases. Defendant was indicted on

---

[1] Also present were Attorney William B. Pole, appearing on behalf of co-defendant Karey Lee Willey; Attorney Joephet R. Alcantara, appearing on behalf of co-defendant Kyle Joaquin Topasna; and Attorney Samuel S. Teker, appearing on behalf of co-defendant Marson Kintin.

charges of (1) Attempted Murder (as a First Degree Felony), with a Special Allegation of Use or Possession of a Deadly Weapon in the Commission of a Felony; (2) Possession of a Firearm without a Firearm Identification Card (as a Third Degree Felony); (3) Discharge of Firearms (as a Misdemeanor); and (4) Reckless Conduct (as a Misdemeanor). *See* Indictment (June 9, 2022).

On September 19, 2022, Defendant filed his Motion to Quash Summons and Dismiss Indictment. Defendant presents three issues: the court's lack of *in personam* jurisdiction over him, the untimeliness of his arraignment, and a constitutional challenge to the firearms charges against him in light of the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). Co-defendant Karey Lee Willey ("Willey") joined Defendant's motion on the latter argument. *See* Joinder (Sept. 20, 2022). On October 6, 2022, the People filed an Opposition, and Defendant and Willey each filed replies on October 12, 2022, and October 14, 2022, respectively. The Court heard the matter on October 23, 2023, and took the matter under advisement at the conclusion of the hearing.

## DISCUSSION

### 1. Defendant Voluntarily Submitted to the Superior Court's Personal Jurisdiction

Defendant first argues that the Court lacks jurisdiction over him because the Summons (June 10, 2022) issued for his appearance in this case was not served on him before the hearing on June 29, 2022. It is true that Defendant was not served with the Summons. *See* Affidavit of Non-Service (June 29, 2022). It is also true that Defendant was informed by both the judge presiding over Criminal Case No. CF0361-22 and by the Probation Services Division of the Superior Court that he should appear for June 29, 2022 hearing, and that he did so.

Defendant argues that the non-service of the Summons is a defect which compels the dismissal of his Indictment. Defendant frames the issue as a matter of *in personam* (i.e., personal) jurisdiction. *See* Mot. Quash at 15, Pangelinan Reply at 3 (Oct. 14, 2022). Citing

federal civil case law, Defendant asserts that it "has long been settled that in personam jurisdiction can be obtained in only two ways: the voluntary appearance of the defendant or service of process upon him in strict conformance with a valid statute so authorizing." Mot. Quash at 4 (citing *Kadet-Kruger & Co. v. Celanese Corp. of America*, 216 F. Supp. 249, 250 (N.D. Ill. 1963)). Defendant argues that he was not served in conformance with the relevant statutes and that his appearance on June 29, 2022 was not "voluntary," but was caused by the erroneous advice of the Superior Court that he was required to appear. *Id.* at 15-17.

Under 8 GCA § 15.20(a), "[i]f it appears from the complaint and the affidavits filed therewith that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the judge shall issue a summons for the appearance of the defendant." However, nothing in that statute, or in Title 8 GCA ch. 15 more generally, explains what must happen if this procedure is not followed.

Defendant argues that the proper remedy is dismissal of the Indictment, analogizing to federal cases interpreting Federal Rules of Criminal Procedure 4 and 9. *See* Mot. Quash at 5 (citing *United States v. Heijnen*, 376 F. Supp. 2d 1193 (D. N.M. 2005)); Pangelinan Reply at 5-8 (analyzing *United States v. Kolon Industries, Inc.*, 926 F. Supp. 2d 794 (E.D. Va. 2013)). These cases do support the proposition that defective service of process may defeat personal jurisdiction where jurisdiction is wholly conditioned on proper service of process. However, both cases also recognize that where a defendant voluntarily appears before the court, this too confers personal jurisdiction. *See Heijnen*, 376 F. Supp. 2d at 1195 (denying motion to dismiss for improper service where defendant appeared for his arraignment and filed motions before raising the issue); *Kolon Industries*, 926 F. Supp. 2d at 798 ("*Absent a voluntary appearance by the defendant*, the Court simply cannot exercise jurisdiction. . . ." (emphasis added)).

Here, it is undisputed that Defendant has appeared before the Superior Court for several hearings. And despite Defendant's argument to the contrary, voluntariness—in the colloquial sense of that word—is not an essential component of personal jurisdiction. As explained by the Second Circuit in *United States v. McLaughlin*:

> When a District Court has subject matter jurisdiction over the criminal offenses charged, it has personal jurisdiction over the individuals charged in the indictment and present before the court to answer those charges. The voluntariness of the defendant's appearance in the District Court is not relevant. A defendant need not acquiesce in or submit to the court's jurisdiction or actually participate in the proceedings in order for the court to have personal jurisdiction over the defendant.

949 F.3d 780, 781-82 (2d Cir. 2019) (citations omitted). Thus, a federal court has personal jurisdiction over a defendant who appears before the court—even when the defendant has been kidnapped across state lines to be brought to the court, *Frisbie v. Collins*, 342 U.S. 519, 522 (1952), or when the defendant has been forcibly abducted from another country to be brought to court, *United States v. Alvarez-Machain*, 504 U.S. 665, 670 (1992). A federal court likewise has personal jurisdiction over a defendant who appears under the auspice of making a mere "special" appearance to contest personal jurisdiction, *United States v. Pryor*, 842 F.3d 441, 447-48 (6th Cir. 2016), and over a defendant who appears while denying the legitimacy of the federal government altogether, *McLaughlin*, 949 F.3d at 781. In short, even if federal precedent supports Defendant's position regarding defective service, federal precedent also defeats Defendant's position regarding the need for a "voluntary" appearance.

The term "voluntary" in this context does not measure the Defendant's desire to appear before a court; it simply means the opposite of "compulsory," i.e., by service of process. *See, e.g., Stone Land and Livestock Company, Inc. v. HBE, LLP*, 962 N.W.2d 903, 908 (Neb. 2021) ("a voluntary appearance is made by one who appears without having been served with process, while a compulsory appearance is made by a party who is required to appear as a result of being

served with process."); *Thermoid Co. v. Fabel*, 151 N.E.2d 883, 885 (N.Y. 1958) (where defendant "traveled up to New York from his North Carolina home without arrest or process or other compulsion," his appearance "was in fact and in law voluntary."). Here, Defendant indisputably appeared before the court, even though his appearance was not compelled by service of process. It was thus a "voluntary" appearance, which obviates the need for service of process. The Court will neither quash the Summons nor dismiss the Indictment on this basis.

## 2. There Was Good Cause for Defendant's Untimely Arraignment

Defendant next argues that the Indictment should be dismissed due to his untimely arraignment. Mot. Quash at 17. Guam law provides that a defendant "shall be arraigned promptly after the indictment . . . is filed." 8 GCA § 60.10(a). Interpreting this statute, the Guam Supreme Court has held that "unless good cause is shown, a complaint shall be dismissed where a defendant is not promptly arraigned within 60 days of the filing of the complaint." *People v. Rasauo*, 2011 Guam 14 ¶ 14. Here, the Indictment against Defendant was returned on June 9, 2022, and Defendant's arraignment occurred on August 9, 2022, which is sixty-one (61) days after the Indictment was returned. Clearly, this is one day too many.

It must be noted, however, that the hearing on August 9, 2022 was actually the fourth hearing held for arraignment purposes. Defendant initially appeared for arraignment on June 29, 2022, before Magistrate Judge Quan. Handwritten notes on the Minute Entry from this hearing indicates that Defendant "needs to get own atty", which indicates that a continuation was granted for the purpose of allowing Defendant to secure legal representation before arraignment. Defendant next appeared before Magistrate Judge Sison on July 14, 2022. Handwritten notes on the Minute Entry from this hearing indicate that the arraignment was again continued to allow Defendant to secure legal representation. Defendant then appeared before Magistrate Judge Sison on July 28, 2022, again without counsel. The Minute Entry from this hearing includes a

handwritten note that Defendant "can't afford atty." This note, coupled with the Notice of Court Appointed Counsel issued the same day as this hearing, indicates that the Court appointed Defendant an attorney and continued the arraignment once again in order to give Defendant time to confer with his attorney before arraignment.

Although Defendant was ultimately arraigned sixty-one (61) days after the Indictment was returned, the Court finds that most of this time is excludable from the sixty-day arraignment calculation. The Guam Supreme Court has held that "cases which evaluate delay and good cause under the statutory speedy trial context [are] instructional in the prompt arraignment setting." *People v. Julian*, 2012 Guam 26 ¶ 22. In the statutory speedy trial context, "[d]elay caused by the conduct of the defendant constitutes good cause to deny his motion to dismiss," and "[d]elay for the defendant's benefit also constitutes good cause." *People v. Flores*, 2009 Guam 22 ¶ 32 (quoting *People v. Johnson*, 606 P.2d 738, 746 (Cal. 1980)). Therefore, any delays in Defendant's arraignment caused by his own conduct, or for his own benefit, should be excluded from the calculation.

The delay during the period from June 29, 2022 through July 28, 2022 can be attributed to Defendant's inability to secure private legal representation. It has not been alleged that Defendant was eligible for court-appointed counsel prior to July 28, 2022, or that Defendant wanted to represent himself but was denied that opportunity. These continuances were therefore "caused by the conduct" of Defendant in not finding legal representation sooner, and were also "for the defendant's benefit" since having legal representation at a critical juncture in the case would clearly be beneficial. This period is excludable from the calculation.

The period of time from July 28, 2022 through August 9, 2022 is also excludable. The Guam Supreme Court has recognized that "[a] defendant must be given reasonable time and opportunity to . . . consult with counsel." *People v. Singeo*, 2012 Guam 27 ¶ 13. In that case, the

grant of twenty-eight (28) days for defendant to confer with counsel prior to arraignment was held to be both reasonable and also fully excludable. *See id.* Here, Magistrate Judge Sison granted Defendant twelve (12) days for consultation with his attorney prior to his arraignment. Under *Singeo*, this appears to be both a reasonable amount of time for consultation, and also time fully excludable from the calculation.

In sum, Defendant was arraigned sixty-one (61) days after the Indictment was returned, which is one day too many under *People v. Rasuao.* However, the Indictment need not be dismissed on this basis if "good cause" for the delay is shown. Here, good cause excludes all but twenty (20) of those days because the other forty-one (41) days were granted to Defendant so he could find an attorney (June 29, 2022 through July 28, 2022) or granted to Defendant to give him time to consult with his court-appointed attorney (July 29, 2022 through August 9, 2022). Therefore, the Court will not dismiss the Indictment on this basis.

### 3. The Firearms Charges Are Not Unconstitutional

Defendant is charged with Possession of a Firearm without a Firearm Identification Card (as a Third Degree Felony) under 10 GCA §§ 60106, 60114, and 60121(e), and with Discharge of Firearms (as a Misdemeanor) under 9 GCA § 61.70(b). Defendant and Co-defendant Willey lodge a constitutional challenge to all these statutes, and more generally to Guam's entire firearms licensing scheme, in light of the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *See* Mot. Quash at 21-24; Pangelinan Reply at 13-18; Joinder at 1-2 (Sept. 20, 2022); Willey Reply at 1-3 (Oct. 12, 2022).

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. At the outset, it should be noted that this right is *not* explicitly extended to Guam through the Bill of Rights of the Organic Act of Guam.

*See* 48 U.S.C. § 1421b; *Guam v. Guerrero*, 290 F.3d 1210, 1214 n.6 (9th Cir. 2002). And where a federal constitutional provision has not been extended to Guam through the Organic Act, federal case law interpreting that constitutional provision is not necessarily relevant to Guam. *See People v. San Nicolas*, 2013 Guam 21 ¶ 24 ("Federal jurisprudence on [constructive amendments to indictments] is based on the Fifth Amendment right to a grand jury, which is not a right extended to Guam, and is therefore not controlling on decisions of our court."); *Sakamoto v. Duty Free Shoppers, Ltd.*, 613 F. Supp. 381, 393 (D. Guam 1983) (finding "absolutely no merit" to an argument under the Commerce Clause because the Organic Act does not extend that provision to Guam). Therefore, it is unclear to the Court whether *Bruen* would apply to Guam. However, because the parties have not argued this issue, and because it does not change the Court's conclusion, this decision will proceed under the assumption that *Bruen* does apply.

In *Bruen*, the U.S. Supreme Court explained that federal courts faced with a Second Amendment challenge have typically applied a "two-step" test: first, analyzing the history and tradition of the governmental regulation propounded, and second, considering "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Bruen*, 597 U.S. at 18. However, *Bruen* explains that this is "one step too many," as the "means-end" scrutiny applied in the second step is not consistent with the Constitution. *Id.* at 19. Instead, the Second Amendment inquiry must be as follows:

> when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 17.

*Bruen* involved a challenge to New York's firearms regulation scheme. That scheme provided that an individual could not obtain a concealed-carry firearms license without demonstrating "proper cause," which was defined as "a special need for self-protection distinguishable from that of the general community." *Id.* at 12. The challenge was brought by two individuals who had attempted to obtain such a license, but were denied because they were deemed to have not demonstrated statutory "proper cause." *Id.* at 15-16. The *Bruen* petitioners were not criminal defendants challenging the constitutionality of their charges, but rather law-abiding citizens challenging the constitutionality of a scheme that permitted the New York firearms licensing authorities to deny their otherwise-proper application.

This context is important for explaining what the *Bruen* court held, and what it did not. *Bruen* held a licensing scheme unconstitutional where it granted access to a concealed-weapon permit "only when an applicant demonstrates a special need for self-defense." *Id.* at 11. *Bruen* did not "address the question of whether a requirement like [a firearms owner identification card] was permissible under federal law." *People v. Gunn*, 227 N.E.3d 824, 830 (Ill. Ct. App. 2023). It did not "address a licensing scheme's impact on potential criminal charges for carrying a firearm without a license." *People v. Mosqueda*, 97 Cal. App. 5th 399, 406 (Ct. App. 2023). And accordingly, it does not "preclude the prosecution for unlawful possession of a firearm of a defendant who did not previously apply for, and was denied, a license." *People v. Williams*, 175 N.Y.S.3d 673, 675-77 (N.Y. Sup. Ct. 2022).

The Court therefore disagrees with Defendant's contention that the takeaway from *Bruen* is that "an ordinary, law-abiding citizen of sufficient age does not need permission to carry a handgun in public for the purpose of defense." Mot. Quash at 23. *Bruen* does not hold that the government can never regulate firearms; it only holds that firearms licensing authorities may not exercise discretion (i.e., through a "proper cause" determination) to deny a firearms license to an individual otherwise entitled to receive one. Indeed, *Bruen* explicitly recognizes that a firearms

licensing scheme may well be constitutional, as long as licensing decisions are based on legitimate, non-discretionary factors:

> To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes, under which a general desire for self-defense is sufficient to obtain a [permit]. Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent law-abiding, responsible citizens from exercising their Second Amendment right to public carry. Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens. And they likewise appear to contain only narrow, objective, and definite standards guiding licensing officials, rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry.

*Bruen*, 597 U.S. at 38 n.9 (internal citations omitted). Thus, as Justice Kavanaugh noted in his concurrence, *Bruen* "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." 597 U.S. at 79 (Kavanaugh, J., concurring). Nor does it prohibit Guam from doing so. The Court therefore holds that *Bruen* does not render Guam's firearms licensing scheme facially unconstitutional.

Defendant and Willey each point to several individual provisions of Guam's firearms licensing scheme which they believe are unconstitutional as-applied to them in light of *Bruen*.[2] But even if they are correct that certain provisions might be unconstitutional as-applied to a particular license applicant, there is nothing in the record to suggest that either Defendant or Willey ever applied for a firearms license, or that either was denied a license based on these purportedly unconstitutional provisions. Furthermore, neither co-defendant was specifically charged under

---

[2] For example, Defendant argues that 10 GCA §§ 60109(a) and 60109.1 creates an unconstitutional "may-issue" scheme for concealed-carry permits. *See* Pangelinan Reply at 13-14. However, Defendant has not been charged under those statutes, nor does the Indictment make any reference to concealed carry of a firearm.

any of the specific provisions they claim are unconstitutional. Accordingly, the constitutional challenge here is not really an "as-applied" challenge, since none of these provisions were actually applied to them. *See, e.g., State v. Wilson*, 543 P.3d 440, 444-45 (Haw. 2024) ("Had Wilson followed the [] application process, and been denied, then he might have standing to challenge that law's constitutionality in his criminal case. But those are not his facts."); *In re D.L.*, 93 Cal App. 5th 144, 161 (Ct. App. 2023); *State v. Wade*, 301 A.3d 393, 403-04 (N.J. Super. Ct. App. Div. 2023); *Chew v. United States*, --- A.3d ----, 2024 WL 1918730 *2 (D.C. Ct. App., May 2, 2024); *People v. Rodriguez*, --- N.Y.S. 3d ---, 2024 WL 1513903 *1 (N.Y. App. Div. Apr. 9, 2024). Accordingly, the Court holds that Defendant and Willey lack standing to mount an as-applied challenge to these aspects of Guam's firearms licensing scheme. The Court will not dismiss the firearms charges on this basis.

Finally, Defendant argues that the charge of Discharge of Firearms (As a Misdemeanor) under 9 GCA § 61.70(b) is facially unconstitutional after *Bruen* because it "restricts an ordinary, law-abiding citizen from protecting himself . . . within 50 yards of an occupied dwelling and he can't find the owner to get consent." Mot. Quash at 23. Against this argument, the Court finds persuasive the Supreme Court of Pennsylvania's extensive discussion in *Barris v. Stroud Township*, 310 A.3d 175, 208-212 (Penn. 2024) of the history and tradition of similar, location-based firearms regulations. After reviewing the history of location-based regulations, that court concluded that the history "demonstrate[s] a sustained and wide-ranging effort by municipalities, cities, and States of all stripes — big, small, urban, rural, Northern, Southern, etc. — to regulate a societal problem that has persisted since the birth of the Nation." *Id.* at 214. The Court finds that 9 GCA § 61.70(b) fits comfortably within that history, and it is not made unconstitutional by *Bruen*. The Court will not dismiss this charge either.

## CONCLUSION

Based on the above analysis, the Court **DENIES** Defendant's Motion to Quash Summons and Dismiss Indictment in its entirety.

**SO ORDERED** MAY 1 7 2024

HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam